IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

STACEY FARRELL,     *

           *

   Plaintiff,    *

           *   Civil No. TMD 11-2995

   v.       *

           *

           *

CAROLYN W. COLVIN,   *

Acting Commissioner of Social Security, *

           *

   Defendant.[1]   *

         ************

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Stacey Farrell, Jr. ("Plaintiff"), seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 16) and Defendant's Motion for Summary Judgment (ECF No. 20).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

for Summary Judgment (ECF No. 20) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**I**

**Background**

Plaintiff was born in 1975, has a high-school education, and previously worked as an emergency medical technician ("EMT") and heating/air conditioning service technician.  R. at 32, 176, 181, 186.  On October 27, 2008, Plaintiff applied for DIB and SSI, alleging disability beginning on June 18, 2008, due to herniated discs, nerve damage, and depression.  R. at 14, 135-43, 176, 180.  The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 66-69, 74-86.  On February 3, 2011, ALJ Larry Banks held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 23-65.  On March 16, 2011, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of June 18, 2008.  R. at 11-22.  Plaintiff sought review of this decision by the Appeals Council and submitted additional evidence.  R. at 124-25, 587-94.  The Appeals Council granted Plaintiff's request for review (R. at 130-34) and issued a decision on August 25, 2011, finding Plaintiff not disabled from his alleged onset date of disability through the date of the ALJ's decision (R. at 1-10).  The Appeals Council's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On October 20, 2011, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was

2

reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.      John S. Tidball, M.D.**

A CT scan of Plaintiff's lumbar and cervical spine on June 28, 2008, was normal.  R. at 440-41.  An MRI of Plaintiff's lumbar spine on July 9, 2008, revealed no evidence of vertebral compression or acute marrow pathology.  R. at 438.  The MRI also revealed minimal L4-L5, L5-S1 disc bulging and facet arthropathy without annular tear, disc herniation, or central stenosis.  R. at 438.  Further, no direct nerve root compression was identified.  R. at 438.

Dr. Tidball, Plaintiff's treating family physician, expressed an opinion about Plaintiff's functional limitations on August 28, 2008.  R. at 474-75.  Regarding Plaintiff's mental limitations, Dr. Tidball opined that Plaintiff had "extreme" restrictions in activities of daily living; "extreme" difficulties in maintaining social functioning; and "constant" difficulties in maintaining concentration, persistence, or pace.  Plaintiff also experienced "continual" episodes of decompensation of extended duration.  R. at 475.  He diagnosed Plaintiff with generalized anxiety disorder and back pain.  R. at 475.

Regarding Plaintiff's physical limitations, Dr. Tidball opined that Plaintiff could only lift and carry fewer than ten pounds and sit for fifteen to twenty minutes and stand for one hour in an eight-hour workday.  R. at 474.  Dr. Tidball stated that Plaintiff's symptoms "are provoked by prolonged sitting, standing, lying supine."  R. at 476.  "[L]ifting a gallon of milk, [b]ending, crawling trigger the severe pain.  Squatting is briefly tolerable."  R. at 476.

On February 25, 2009, in a letter to Plaintiff's workers' compensation attorney (R. at 36, 38, 418), Dr. Tidball noted that Plaintiff was working as an ambulance attendant on June 18, 2008.  "While removing a 600 pound patient from an ambulance the patient rolled.  To prevent the patient from rolling off or capsizing the stretcher [Plaintiff] quickly reacted and lifted up one side of the stretcher."  R. at 418.  "He immediately felt low back pain and pain and tingling down both legs into his toes.  He subsequently developed pain in his upper neck and head, and this resolved with a left suboccipital nerve block on 7/11/08."  R. at 418; *see* R. at 481.  "The persistent back pain and inability to work brought on a depression (severe) which did not respond to Zoloft.  Effexor helped somewhat, but with Cymbalta the depression has significantly improved."  R. at 418.  According to Dr. Tidball, "[t]he dates of [Plaintiff's] temporary total disability are from the date of his accident until the present time and continuing."  R. at 418.

## B.    State Agency Medical Consultants

On February 18, 2009, James W. Nutter, Ed.D., evaluated Plaintiff's mental status.  R. at 526-32.  Plaintiff neither expressed any feelings of worthlessness nor had attempted suicide.  R. at 529.  Plaintiff also denied problems with getting along with people or relating to co-workers and supervisors.  R. at 529.  Plaintiff's ability to understand and follow simple instructions independently was adequate.  R. at 529.  He further "showed no difficulty with irritability, confrontational attitude, obvious problem with impulse control, apathy, indifference or apparent manipulation."  R. at 530.  "In reference to mood and affect, [Plaintiff] reports feelings of loss, futility and inadequacy since his injury."  R. at 530.  He also "described a sense of hopelessness and futility with securing appropriate treatment and/or returning to his prior level of functioning."  R. at 530.  Dr. Nutter noted that Plaintiff "could compute serial 7's with time and

concentration" and "understood 2 or 3 abstractions." R. at 530. Dr. Nutter's initial impression was a mood disorder related to a medical condition. R. at 532.

On March 2, 2009, D. Shapiro, Ph.D., completed a psychiatric review technique form ("PRTF") on which Dr. Shapiro evaluated Plaintiff's mood disorder under paragraph B of Listing 12.04 for affective disorders. R. at 533-46. Dr. Shapiro opined that Plaintiff's mental impairment caused him to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 543. Dr. Shapiro did not find evidence to establish the presence of criteria under paragraph C of Listing 12.04. R. at 544. Dr. Shapiro further found that Plaintiff "has a medically determinable impairment(s), but the conditions do not meet or equal listings." R. at 545. Accordingly, Dr. Shapiro assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 547-50) and opined that he was moderately limited in his ability to (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to (4) respond appropriately to changes in the work setting. Plaintiff otherwise was not significantly limited. R. at 547-48.

Dr. Shapiro also found the following:

[Plaintiff] is a 33-[year]-old male with a reported history of anxiety related to learning difficulties in school. He was apparently functioning well until an injury in June 2008 and he is now reporting symptoms of depression related to his pain and physical limitations.

5

There is no evidence of any significant cognitive limitations.  [Plaintiff] reports some difficulties with A/C, which are credible.

[Plaintiff] demonstrates appropriate social behavior and denies a history of significant problems in this area.  His ability to adapt at this time is somewhat limited by condition.

R. at 549.  On September 22, 2009, another state agency consultant affirmed Dr. Shapiro's assessment.  R. at 574.

On January 26, 2009, A. Serpick, M.D., assessed Plaintiff's physical RFC.  R. at 513-20. Dr. Serpick opined that Plaintiff could (1) lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities.  R. at 514.  Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.  R. at 515-17.

On September 16, 2009, W. Hakkarinen, M.D., also assessed Plaintiff's physical RFC. R. at 566-73.  Dr. Hakkarinen opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and twenty-five pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities.  R. at 567. Further, Plaintiff could occasionally climb and frequently balance, stoop, kneel, crouch, and crawl.  R. at 568.  Plaintiff had no manipulative, visual, communicative, or environmental limitations.  R. at 569-70.  Finally, Dr. Hakkarinen found that Plaintiff's "allegation of inability to lift over 5 lb [was] not consistent with findings of normal strength.  [Plaintiff] can drive and shop, [demonstrating] effective ambulation."  R. at 571.

## C.     Charles A. Sansur, M.D.

Dr. Sansur, a neurosurgeon, noted on June 29, 2010, that X-rays of Plaintiff's lumbar spine "did not demonstrate any abnormal alignment and no evidence of spondylolisthesis."[3]  R. at 582.  Dr. Sansur "did not see any explanation for this severe pain that [Plaintiff] was in."  R. at 582.

On August 3, 2010, Dr. Sansur reviewed MRIs of Plaintiff's thoracic and lumbar spine, noting that "there is good disk hydration in all disks.  There is no evidence of any disk herniation."  R. at 583.  "It is quite likely that L5-S1 is the source of his diskogenic back pain."  R. at 583.  Dr. Sansur recommended an EMG nerve conduction study.[4]  R. at 583.

## D.     Hearing Testimony

### 1.     Plaintiff's Testimony

On February 3, 2011, Plaintiff testified that he injured his back in June 2008 carrying a patient onto a stretcher while working as an EMT.  R. at 34-35.  He raises his four children by himself and finds grocery shopping, getting out of bed, and playing with his children to be difficult.  R. at 39, 41.  According to Plaintiff, he has been diagnosed with lumbar radiculopathy.[5]  R. at 40.  As stated by Dr. Tidball, Plaintiff is unable to lift a gallon of milk because of "bending over and trying to do certain things."  R. at 41, 53.  His ability to stand and

---

[3] Spondylolisthesis denotes the forward displacement of one vertebra over another.  *Dorland's Illustrated Medical Dictionary* 1779 (31st ed. 2007) [hereinafter *Dorland's*]; *see Gonzalez v. Astrue*, No. 1:11-cv-01473-SKO, 2013 WL 394415, at *1 n.4 (E.D. Cal. Jan. 30, 2013).

[4] Electromyography denotes an electrodiagnostic technique for recording the extracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation.  *Dorland's*, *supra* note 3, at 609; *see Stewart v. Astrue*, No. 1:09-cv-1928 SKO, 2011 WL 1134306, at *3 n.6 (E.D. Cal. Mar. 25, 2011).

[5] Radiculopathy denotes disease of the nerve roots.  *Dorland's*, *supra* note 3, at 1595; *see Stewart*, 2011 WL 1134306, at *2 n.5.

walk depends on how badly his legs and back hurt.  R. at 49-50.  "[T]here are some times I can stand for five minutes, there are some times that I can only stand for a couple of minutes before my leg and stuff starts really aching."  R. at 49-50.  His pain medications "really don't help."  R. at 50.  Plaintiff testified that he would not be able to perform less strenuous work because he is unable to sit for prolonged periods of time, and he "really wouldn't be comfortable" at a desk job.  R. at 51-52.  He is unable to stand for longer than five minutes, as pain radiates from his lower back to his toes, particularly down his left leg.  R. at 52-53.  Plaintiff is able to cook while sitting, but is unable to take out the trash.  R. at 54.  He also is able to drive his children to their school bus stop.  R. at 55.

Plaintiff also testified that he suffers from depression and anxiety that make him feel hopeless.  R. at 44-45.  He obtains his antidepressant medication from Dr. Tidball and counseling from the Counseling Center for Children.  R. at 45-46.

### 2.      VE Testimony

The VE classified Plaintiff's past work as an EMT and heating/air conditioning service technician as skilled and heavy.[6]  R. at 59.  A hypothetical person with Plaintiff's same age, education, and work experience could not perform Plaintiff's past work if that person could do no more than light work[7] and had the following additional limitations posed by the ALJ:

> [A] sustained option the person should not be required to stand any more than 15
> to 20 minutes before the person's permitted to sit, or sit any more than 15 to 20

---

[6] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  20 C.F.R. §§ 404.1567(d), 416.967(d).

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*

minutes before the person's permitted to stand.  Should do no climbing of ropes, ladders or scaffolds, can perform other possible moves such as stooping for only an occasional basis.  I'm also going to find minor difficulties in concentration, persistence and pace.  He's only going to be in limited performing of [sic] unskilled tasks, simple, routine unskilled tasks."

R. at 59-60.  Such a hypothetical person, however, could perform unskilled,[8] light work such as a security worker, machine tender, or inspector.  R. at 60.  Further, this hypothetical person could perform work such as a finish machine operator, quality control worker, or table worker if the individual could only perform work at the sedentary[9] level lifting fewer than ten pounds frequently with a sit/stand option as described above.  R. at 60-62.

## E.    Post-Hearing Evidence

After the conclusion of the administrative hearing, Plaintiff submitted a report from his social worker, Carolyn Nelson, LCSW-C, dated February 9, 2011.  R. at 585-86.  Ms. Nelson diagnosed Plaintiff with "Major Depression Recurrent—Moderate; rule out Anxiety Disorder" and assessed a GAF rating of 56.[10]  R. at 586.  She noted the following:

---

[8] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. §§ 404.1568(a), 416.968(a).

[9] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."   20 C.F.R.  §§ 404.1567(a), 416.967(a).

[10] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) [hereinafter *DSM-IV-TR*].  A GAF rating between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* at 34.  The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

[Plaintiff] is extremely depressed.  He has lost interest in most activities that he used to enjoy doing, feelings of worthlessness, insomnia, lack of energy, psychomotor agitation, diminished ability to think or concentrate, and at times recurrent thoughts of death.

[Plaintiff] also has significant anger issues as a result of his level of pain and being a single parent of four children with Attention Deficit Hyperactivity Disorder. . . .

I have been working with [Plaintiff] on Anger Management techniques as well as his depression.  He feels like he is on a roller coaster ride in terms of his emotions and trying to deal with everyone's needs.  He often comes to session agitated and angry.  This seems to lower his ability to deal with life situations.

R. at 586.

    After the ALJ issued his decision, Plaintiff submitted to the Appeals Council additional evidence of a psychological evaluation on February 15, 2011, by Laurie Pumphrey, Psy.D., a licensed psychologist, and Spencer Byrnes, M.A., a doctoral extern, at the Center for Children. R. at 587-94.  Plaintiff had been "referred for psychological assessment by his therapist, Carolyn Nelson, LCSW-C, to help understand the underlying causes of his depression and to identify if [Plaintiff] has an anxiety disorder."  R. at 588.  Dr. Pumphrey noted that Plaintiff "has some social relationships and reported playing darts with friends on a weekly basis.  He also enjoys spending time with his cousin and attending church services, which he stated makes him 'feel good when [he's] there.'"  R. at 590 (alteration in original).  Testing of Plaintiff's intellectual functioning revealed a full-scale IQ score of 77, or within the borderline range of intellectual functioning.[11]  R. at 591.  Dr. Pumphrey's ultimate diagnostic impressions included (1) Major

---

[11] Borderline intellectual functioning refers to an IQ in the 71 to 84 range.  *DSM-IV-TR*, *supra* note 10, at 740.

Depressive Disorder, Moderate, Recurrent; (2) Anxiety Disorder Not Otherwise Specified ("NOS"); and (3) a GAF score of 50.[12]   R. at 593.

Dr. Pumphrey found that

[Plaintiff] is experiencing a considerable amount of irritability, feelings of inadequacy, resentment, and worry.  It appears he ruminates about things he can not accomplish instead of focusing on the many things he does do.  A diagnosis of Anxiety Disorder NOS was given as it appears that [Plaintiff's] anxiety is stemming from current life stressors, such as medical problems, family difficulties, and lack of employment that have been occurring the past couple years [sic].  If he continues to have significant anxiety once these current stressors have dissipated a diagnosis of generalized anxiety should be considered.

R. at 593.  Dr. Pumphrey's recommendations included continued individual psychotherapy, medication management, and regular involvement in social activities.  R. at 593-94.

### III

### Summary of Administrative Decisions

**A.     ALJ's Decision**

On March 16, 2011, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of June 18, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a security worker, machine tender, inspector, finish machine operator, inventory control worker, or table worker.  R. at 16-

---

[12] A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *DSM-IV-TR*, *supra* note 10, at 34; *see Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).

22. The ALJ accordingly found that he was not disabled from June 18, 2008, through the date of the decision. R. at 22.

In so finding, the ALJ found that Plaintiff had the RFC to perform light and sedentary work, except Plaintiff "cannot climb ladders, ropes or scaffolds, can occasionally perform postural movements such as stooping, and has moderate limitations in concentration, persistence or pace." R. at 18. The ALJ also found that Plaintiff had "the mental capacity for unskilled work." R. at 20. Regarding Plaintiff's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that not all of [his] statements concerning the intensity, persistence and limiting effects of these symptoms are fully credible." R. at 20.

The ALJ also weighed the opinion evidence in the record and gave "significant weight" to Dr. Shapiro's opinion, "great weight" to Ms. Nelson's opinion, and little weight to Dr. Tidball's opinion. R. at 19-20. In considering Dr. Tidball's opinion, the ALJ stated the following:

> Dr. Tidball limited [Plaintiff] to lifting less than ten pounds and limits [sic] him to only one hour of standing, one hour of walking, and 15 to 20 minutes of sitting in an eight-hour workday. This opinion is not supported by objective findings and, in fact, is rather contrary to objective findings in light of the numerous diagnostic studies that have shown no nerve root impingement and the fact that neither Dr. Tidball nor any other physician has prescribed the use of any assistive device for ambulation.

R. at 19.

The ALJ further found that Plaintiff did "not meet a listing for an affective disorder or an anxiety disorder." R. at 17. In this regard, the ALJ considered Plaintiff's mental impairments under Listings 12.04 and 12.06 and found that Plaintiff had the following restrictions under the paragraph B criteria under the special technique for reviewing mental impairments: (1) mild

restrictions in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) less than three repeated extended episodes of decompensation per year.  R. at 17.

## B.   Appeals Council's Decision

After granting Plaintiff's request for review, the Appeals Council issued its unfavorable decision on August 25, 2011.  R. at 1-10.  Specifically, the Appeals Council adopted the ALJ's conclusions that Plaintiff's "mental impairments cause mild restrictions in activities of daily living; present mild difficulties in maintaining social functioning; result in moderate deficiencies in concentration, persistence or pace; and have produced less than three episodes of decompensation."  R. at 5.  The Appeals Council did not adopt the ALJ's RFC assessment, instead finding that Plaintiff could perform a reduced range of sedentary work limited to, among other things, "simple, routine, and unskilled tasks due to moderate limitations in maintaining concentration, persistence or pace," with "a sit/stand option with no more than 15-20 minutes of sitting or standing before being allowed to change positions."  R. at 5-6, 8.  Further, the Appeals Council adopted the ALJ's finding that Plaintiff's statements were not credible to the extent they were inconsistent with the Appeals Council's RFC assessment.  R. at 6.  The Appeals Council also "considered the medical opinions of record and agree[d] with the rationale and findings of the [ALJ] as to the medical opinions, including as to the expert opinion of the State agency medical consultants."  R. at 6.  On the basis of Dr. Pumphrey's evaluation, the Appeals Council found that Plaintiff had the additional severe impairment of anxiety disorder NOS during the relevant period (R. at 5), but gave "little weight" to Dr. Pumphrey's opinion because her report noted Plaintiff's "ability to engage in varied daily and social activities, and [Plaintiff's] ability to utilize anger management techniques to control his behavior" (R. at 6).

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[13]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[13] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.   *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R.   §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Moreover, when the Appeals Council makes a decision, it "may affirm, modify or reverse the [ALJ] hearing decision or it may adopt, modify or reject a recommended decision."   20 C.F.R. §§ 404.979, 416.1479.   In this regard, "when the Appeals Council grants a request for review and issues its own decision, it must 'articulate . . . conclusions with respect thereto.'   A failure to do so constitutes 'reversible error.'"   *Meyer v. Astrue*, 662 F.3d 700, 706 n.2 (4th Cir. 2011) (alteration in original) (citation omitted).

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

### A.    Psychiatric Review Technique

Plaintiff maintains that the ALJ and the Appeals Council failed to follow the special

technique (the psychiatric review technique or "PRT") outlined in 20 C.F.R. §§ 404.1520a and

416.920a for evaluating mental impairments at steps two and three of the sequential evaluation

process.  Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 16-1.  The Commissioner asserts that the

ALJ and the Appeals Council properly found, on the basis of the PRT, that Plaintiff had

medically determinable impairments that were severe but neither met nor equaled a listed

impairment.  Def.'s Mem. Supp. Mot. Summ. J. 17, ECF No. 20-1.

In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R.

§§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing

evaluations of the severity of mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  These

regulations require application of the PRT at the second and third steps of the five-step

framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of

administrative review.   20 C.F.R. §§ 404.1520a(a), 416.920a(a).  This technique requires the

reviewing authority to determine first whether the claimant has a "medically determinable mental

impairment."  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If the claimant is found to have such an

impairment, then the reviewing authority must "rate the degree of functional limitation resulting

from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2),

416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living;

(2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of

decompensation.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  According to the regulations, if the

degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  If so, then the claimant will be found to be disabled.  If not, the reviewing authority will then assess the claimant's RFC.  *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

When a claimant has presented a colorable claim of mental impairment, the ALJ and the Appeals Council when issuing a decision are required "to complete a PRTF and append it to the decision, or incorporate its mode of analysis into [their] findings and conclusions.  Failure to do so requires remand."  *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (per curiam)); *see* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).  "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas."  *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).  "In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a 'narrative rationale,' instead of the 'checklist of . . . conclusions' found in a PRTF."  *Keyser*, 648 F.3d at 725 (alteration in original).

As noted above, the Appeals Council adopted the ALJ's conclusions that Plaintiff's "mental impairments cause mild restrictions in activities of daily living; present mild difficulties

in maintaining social functioning; result in moderate deficiencies in concentration, persistence or pace; and have produced less than three episodes of decompensation." R. at 5. According to Plaintiff, the ALJ and the Appeals Council failed to follow the PRT by failing, among other things, "to provide any explanation whatsoever to support the degree of functional limitation in the four required broad areas of function." Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 16-1.

With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[a]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1). "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction." *Id.* Moreover, "[s]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* § 12.00(C)(2). Further, "[c]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within

established time limits." *Id.* Finally, "[e]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the ALJ did "not rely on Dr. Tidball's opinion" regarding Plaintiff's mental limitations because the ALJ was "not persuaded that [Plaintiff] has extreme mental limitations or physical limitations that require [Plaintiff] to be bedbound more than five hours per day in an eight-hour workday." R. at 20. The ALJ discounted Dr. Tidball's opinion that Plaintiff was "in continual decompensation" because Plaintiff "has denied suicidal ideations, has never been psychiatrically hospitalized, and has a GAF of 56 according to his social worker." R. at 19. Further, the ALJ found that the evidence did "not support a finding of 'extreme' difficulties in social functioning" because "[i]n all his physical and mental examinations, [Plaintiff] is described as a pleasant gentleman with no mention of socialization problems," although the ALJ found that Plaintiff "does tend to isolate himself and ruminate over the decline in his physical

condition." R. at 19. Moreover, the ALJ did not afford great weight to Dr. Shapiro's opinion that Plaintiff experienced one or two episodes of decompensation because the record did not reflect any record of psychiatric hospitalization or the need for intensive psychiatric intervention at any time. R. at 20. In turn, the Appeals Council adopted the ALJ's statements regarding the issues in this case and the evidentiary facts, as well as the ALJ's findings and conclusions regarding whether Plaintiff is disabled. R. at 4. The Appeals Council also adopted the ALJ's findings regarding the effects of Plaintiff's mental impairment on his functional abilities. R. at 5. Thus, "[t]he ALJ clearly met this requirement by rating and assessing [Plaintiff's] limitations in each of these four functional areas. The ALJ was not required to make any more specific findings of [Plaintiff's] functional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1078 (9th Cir. 2007); *see Felton-Miller*, 459 F. App'x at 231 ("The ALJ concluded that [the claimant's] depressive disorder was a severe impairment at step two of the sequential process without discussion of the special technique. At step three, the ALJ listed the four functional areas and analyzed the impact of [the claimant's] depressive disorder on these areas. The decision discusses the medical records relevant to [the claimant's] treatment for depression in assessing her mental RFC. We conclude that the ALJ assessed [the claimant's] mental RFC in accordance with regulations."). Plaintiff's argument in this regard is thus unavailing.

**B.      Appeals Council's RFC Assessment**

Plaintiff next contends that the Commissioner erroneously assessed his RFC contrary to Social Security Ruling[14] 96-8p. Pl.'s Mem. Supp. Mot. Summ. J. 8-17, ECF No. 16-1 (citing,

---

[14] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to

*inter alia, Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).   First, Plaintiff maintains that the Appeals Council failed to explain adequately its RFC assessment.   *Id.* at 10-11.   Second, he asserts that the Appeals Council failed to evaluate properly Dr. Pumphrey's opinions.   *Id.* at 11-13.   Third, Plaintiff contends that the Appeals Council failed to include any limitation in its RFC assessment related to his severe impairment of anxiety disorder.   *Id.* at 13-15.   Fourth, he argues that the ALJ's hypothetical question to the VE did not reflect the Appeals Council's RFC assessment, and so substantial evidence does not support the RFC assessment in this case.   *Id.* at 16-17.   As discussed further below, Plaintiff's arguments are unavailing.

Plaintiff first maintains that the "Appeals Council essentially adopted the [ALJ's RFC] assessment, with the exception of the limitation to light work."   *Id.* at 11 (citing R. at 6).   "However, the Appeals Council determined that the Plaintiff also required the need for a sit/stand option with no more than 15-20 minutes of sitting or standing before being allowed to change positions."   *Id.* (citing R. at 6).   "The Appeals Council provided no explanation whatsoever to support this limitation, and failed to explain why the sit/stand option was not more restrictive, as alleged by the Plaintiff."   *Id.* (citing R. at 51-52).

The burden is on the party attacking an agency's determination to show that prejudice resulted from the error.   *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S.

_____

deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

235, 248, 84 S. Ct. 1236, 1245 (1964))).  Here, Plaintiff does not demonstrate the resultant harm caused by the Appeals Council's inclusion of a sit/stand option of fifteen to twenty minutes in its assessment of his RFC.  The Appeals Council found that the RFC assessment in the ALJ's decision was inconsistent with the ALJ's hypothetical questions presented to the VE, which included "a sit/stand option with no more than 15-20 minutes of sitting or standing before being allowed to change positions."  R. at 6.  The Appeals Council found "the limitations presented in the [ALJ's] sedentary hypothetical question consistent with the evidence of record and adopt[ed] those limitations" as Plaintiff's RFC.  R. at 6.  Although Plaintiff now contends that the Commissioner should have considered a more restrictive sit/stand option in determining his RFC, he points to no evidence in support of his argument, other than his testimony at the hearing. Plaintiff does not argue, however, that the ALJ or the Appeals Council erred in considering his credibility, and so he has waived this argument.  *See United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002).  Accordingly, Plaintiff's contention is without merit.[15]

_____

[15]  In response to Plaintiff's argument in this regard, Defendant contends that Dr. Tidball's opinion that Plaintiff "retained the ability to sit for 15-20 minutes, and stand and walk one hour, despite his impairments" supports the Appeals Council's RFC assessment derived from the ALJ's sedentary hypothetical question to the VE.  Def.'s Mem. Supp. Mot. Summ. J. 20, ECF No. 20-1 (citing R. at 59, 474).  The ALJ found, however, that Dr. Tidball's opinion regarding these limitations was "not supported by objective findings" (R. at 19), a finding which the Appeals Council apparently adopted (R. at 6).  In determining Plaintiff's RFC, the Appeals Council nonetheless included a "sit/stand option with no more than 15-20 minutes of sitting or standing before being allowed to change positions."  R. at 6.  Again, as noted above, Plaintiff fails to demonstrate prejudice from the Commissioner's inclusion of such a sit/stand option. Moreover, "there is no evidence [that the absence of a fifteen- to twenty-minute sit/stand option] in the hypothetical to the VE would have resulted in a different finding by the ALJ regarding the availability of jobs in the national economy."  *Jones v. Astrue*, Civil Action No. 5:07CV87, 2008 WL 4379171, at *20 (N.D.W. Va. Sept. 23, 2008) (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994), for proposition that remand is not necessary, despite ALJ's initial error, when ALJ would have reached same result notwithstanding his error).  The Commissioner's error was, therefore, harmless.  Furthermore, remanding this case for the Commissioner to explain the basis for the sit/stand option in the RFC assessment would be futile.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (stating that ALJ's error is harmless if it is "inconsequential to

Plaintiff further asserts that the Appeals Council in assessing his RFC failed to address Dr. Pumphrey's finding of his intellectual functioning at a borderline level.  Pl.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 16-1.  The Appeals Council gave "little weight" to Dr. Pumphrey's opinion because her "report notes [Plaintiff's] ability to engage in varied daily and social activities, and [Plaintiff's] ability to utilize anger management techniques to control his behavior."  R. at 6.  As the Commissioner points out, Dr. Pumphrey did not diagnose Plaintiff with borderline intellectual functioning (R. at 593), and Plaintiff cites no authority requiring the Appeals Council or ALJ in such a case to include any such limitations in the RFC assessment. *See Gragg v. Astrue*, 615 F.3d 932, 940 (8th Cir. 2010) (holding that ALJ did not err in not considering claimant's borderline intellectual functioning to be severe impairment because claimant "was never actually diagnosed with borderline intellectual functioning").  Assuming, however, that the Appeals Council erred in failing to consider Plaintiff's borderline functioning in assessing his RFC, Plaintiff points to no prejudice warranting remand, as the Appeals Council included in its RFC assessment a limitation to "only simple, routine, and unskilled tasks due to moderate limitations in maintaining concentration, persistence or pace" (R. at 6).  *See Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (per curiam) ("We find that [a hypothetical question] describing [the claimant] as capable of doing simple work adequately accounts for the finding of borderline intellectual functioning." (alteration in original) (quoting *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001))).

---

the ultimate nondisability determination"); *Barry v. Bowen*, No. 88-2026, 1988 WL 124873, at *2 (4th Cir. Nov. 21, 1988) (per curiam) ("To remand on this point where there is not the slightest uncertainty as to the outcome of the remand would be an idle and useless formality." (internal quotation marks omitted)); *cf. Kotofski v. Astrue*, Civil No. SKG-09-981, 2010 WL 3655541, at *5 (D. Md. Sept. 14, 2010) ("[B]ecause the calculation of the RFC would change the outcome of the case, the failure to explain cannot be deemed harmless error.").

Also to no avail does Plaintiff argue that, "in rejecting Dr. Pumphrey's medical opinion, the Appeals Council impermissibly substituted its opinion for that of a medical professional." Pl.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 16-1 (citing, *inter alia*, *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984)).   The Appeals Council gave little weight to Dr. Pumphrey's opinion because, among other things, Plaintiff's "ability to engage in varied daily and social activities" belied her opinion that Plaintiff suffered from serious limitations in social functioning. R. at 6.  The Commissioner has the discretion to afford less weight to a treating source's opinion "in the face of persuasive contrary evidence."  *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  Thus, Plaintiff's argument in this regard also is without merit.  *See Stanley v. Barnhart*, 116 F. App'x 427, 429 (4th Cir. 2004) (per curiam) (discounting claimant's argument that ALJ substituted own opinion that claimant did not suffer from severe emotional impairment for those of medical experts; claimant's daily life activities were not affected to extent alleged, and ALJ properly discredited medical assessments based solely on claimant's subjective reports); *Edney v. Astrue*, Civil No. TJS-12-0473, 2013 WL 674156, at *3 (D. Md. Feb. 22, 2013) (distinguishing *Wilson* and finding that ALJ did not improperly substitute her opinion for that of treating physician, but rather considered treating physicians' opinions in relation to other medical evidence in record, as required by regulations).

Plaintiff also contends that the Appeals Council failed to include any limitation in its RFC assessment related to his anxiety disorder, which the Appeals Council found to be severe. Pl.'s Mem. Supp. Mot. Summ. J. 13, ECF No. 16-1.  The Appeals Council found that Plaintiff's mental impairments caused, among other things, moderate deficiencies in concentration, persistence, or pace.  R. at 5.  Because of these moderate limitations, the Appeals Council found that Plaintiff was limited to performing "only simple, routine, and unskilled tasks."  R. at 6.

As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments.  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98); *see Felton-Miller*, 459 F. App'x at 230 ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement.").  Accordingly, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012).  "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.*  "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.*; *see Walker v. Colvin*, No. C13-3021-MWB, 2014 WL 1348016, at *7 (N.D. Iowa Apr. 3, 2014) ("A finding of a severe impairment at Step Two does not require the ALJ to provide related functional limitations at Step Four.").  In any event, the Appeals Council limited Plaintiff to "simple, routine, and unskilled tasks," which accounts for his moderate limitations in maintaining concentration, persistence, or pace resulting from his mental impairments. *See Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009) (noting that claimants who are "mildly to moderately limited" in concentration, persistence, or pace have been found to be able to perform "simple and repetitive light work"); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009) (concluding that ALJ's reference to moderate limitation in maintaining "attention and concentration" sufficiently

represented claimant's limitations in concentration, persistence, and pace); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) ("The 'failure to complete tasks in a timely manner' is not a functional limitation but the end result of 'deficiencies of concentration, persistence or pace.'"); *Howard*, 255 F.3d at 582 (holding "capable of doing simple, repetitive, routine tasks" adequately captured deficiencies in concentration, persistence, or pace).

Plaintiff nonetheless maintains that substantial evidence does not support the Appeals Council's RFC assessment because the ALJ's hypothetical question to the VE did not reflect the Appeals Council's stated RFC assessment. Pl.'s Mem. Supp. Mot. Summ. J. 17, ECF No. 16-1. According to Plaintiff, the ALJ's hypothetical to the VE did not include the Appeals Council's limitation to "only simple, routine, and unskilled tasks due to moderate limitations in maintaining concentration, persistence or pace." R. at 6. Rather, Plaintiff asserts that the ALJ's hypothetical question included "minor difficulties in concentration, persistence and pace," in addition to a limitation to simple, routine, and unskilled tasks. R. at 59-60. Defendant contends, however, that Plaintiff's "argument fails because there is nothing in the hypothetical question to which he objects that actually contradicts the Appeals Council's RFC assessment." Def.'s Mem. Supp. Mot. Summ. J. 26, ECF No. 20-1. The Court concurs.

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted); *see Fisher*, 181 F. App'x at 364 (noting that hypothetical question is unimpeachable if it adequately reflects RFC for which ALJ had sufficient evidence (citing *Johnson*, 434 F.3d at 659)). "Moreover, it is the claimant's functional

capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher*, 181 F. App'x at 364.

Here, Plaintiff again fails to demonstrate prejudice from the claimed error. The Appeals Council adopted the ALJ's finding that Plaintiff's mental impairments resulted in, among other things, moderate deficiencies in concentration, persistence, or pace. R. at 5. The Appeals Council then determined that Plaintiff's RFC included a limitation to only simple, routine, and unskilled tasks because of these moderate deficiencies. R. at 6. As noted above, a limitation to simple, routine, and unskilled tasks accommodates a moderate limitation in maintaining concentration, persistence, or pace. Thus, whatever significance Plaintiff now ascribes to the ALJ's inclusion of "minor difficulties in concentration, persistence and pace" in his hypothetical question to the VE (R. at 59) was taken into account in the ALJ's hypothetical question regarding "simple, routine unskilled tasks" (R. at 59-60) and incorporated in the ALJ's and Appeals Council's RFC assessments. Plaintiff's argument to the contrary is accordingly unavailing as well. *See Fisher*, 181 F. App'x at 365 ("Because the ALJ's [RFC] determination is supported by substantial evidence and because the challenged hypothetical question merely incorporated that determination, the ALJ committed no error."). In short, substantial evidence supports the assessment of Plaintiff's RFC by the Appeals Council, which applied the correct legal standards in this case.

## VII

## <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 20) is

**GRANTED**.   Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.   The

Commissioner's decision is **AFFIRMED**.   A separate order shall issue.


Date: April 30, 2014                                        _____/s/_____
                                                                      Thomas M. DiGirolamo
                                                                      United States Magistrate Judge